HON. A. J. WILLARD, ASSOCIATE JUSTICE. (b)
(And afterwards Chief Justice.)

HON. J. J. WRIGHT, ASSOCIATE JUSTICE. (c)

HON. HENRY McIVER, ASSOCIATE JUSTICE. (d)

HON. A. C. HASKELL, ASSOCIATE JUSTICE. (e)

HEARD APRIL TERM, 1876.

### COX vs. EDWARDS.

Where a debt, secured by bond and mortgage, was levied on and sold by the Sheriff, the condition of the bond stipulating that the first installment of the debt shall be paid "at the sealing and delivery of this bond," and the Sheriff's advertisement was silent as to the payment thereof: *Held*, That the purchaser was liable for his bid, although the first installment had been paid and such payment had not been endorsed on the bond, and neither he nor the Sheriff knew of the payment at the time of the sale.

The stipulation to pay "at the sealing and delivery of this bond" was sufficient of itself to put the purchaser upon the inquiry.

---

(a) Died March 6th, 1877.

(b) Elected Chief Justice in place of Judge Moses.

(c) Resigned.

(d) Elected in place of Associate Justice Willard.

(e) Elected in place of Associate Justice Wright.

VOL. VIII—1

Even if the terms of the condition of the bond were not sufficient to put the purchaser on the inquiry, under the rule "*caveat emptor*," which applies to Sheriffs' sales, he was liable for his bid,—his want of notice, in the absence of fraud, being no defense, and the doctrine of mutual mistake having no application to Sheriffs' sales.

For the purposes of an action to recover the purchase money, the highest bidder at a Sheriff's sale is fixed with the character of *emptor* by the Act of 1839.—Rev. Stat., 473.

BEFORE TOWNSEND, J., AT DARLINGTON, OCTOBER, 1875.

Action by Thomas E. Cox, as Sheriff of Darlington County, against B. W. Edwards. The case was as follows:

On December 2d, 1872, the plaintiff, as Sheriff of Darlington County, offered for sale to the highest bidder for cash a bond of one J. B. White, payable to John A. Rodgers, conditioned for the payment of $4,800, as follows: $800 " at the signing and delivery of this bond;" the balance in four equal annual installments, with interest. It was dated January 11th, 1870, and the last installment fell due January 1st, 1874. The bond was secured by a mortgage of real estate, which described the bond as conditioned for the payment of $4,800. The Sheriff's advertisement of sale described the bond and the condition thereof, but was silent as to any payment of the bond or any part thereof. The $800 had been paid, but not at the time of the sealing and delivery of the bond, and its payment had not been entered thereon. The Sheriff read out the advertisement at the sale, and the defendant was the highest bidder, at the sum of $2,450, and. having ascertained that the $800 had been paid, he refused to comply with the terms of sale. Neither he nor the Sheriff knew at that time that the $800 had been paid. The Sheriff advertised the bond for resale in January, 1873, at defendant's risk. It was then sold, and purchased by the defendant at the price of $1,150. The action was to recover the difference between the two highest bids of the defendant.

The bond had been levied upon by the Sheriff under an execution of Henry J. Rogers *vs.* John A. Rogers, and the sale was made to satisfy that and other executions. The defendant asked the Court at the trial to instruct the jury as follows:

1. That the common law rule of *caveat emptor*, which does apply to Sheriffs' sales, applies only so far as the title and quality of the property sold are concerned.

2. That in law the quality of a bond is the solvency or insolvency of the obligor.

3. That the rule of *caveat emptor* is not the rule in case of the sale of a bond, whether the sale be by the Sheriff or any private person.

4. That the advertisement of the Sheriff was part of his contract of sale.

5. That whether the rule did or did not apply to the *sale* by the Sheriff of the bond as to its quality, the particular description thereof in his advertisement did imply a term that the bond was what it was represented to be.

6. That whether the rule did or did not apply to the *sale* by the Sheriff of the bond as to its quality, his reading the advertisement *at the time* of sale may be relied on by the defendant as a *positive* representation by the Sheriff that the character of the bond was such as he represented, and that the jury may infer that there was upon the sale a warranty that the bond sold was for the sum of $4,800, without right of credit thereon to the extent of $800.

7. That if at the time of sale the Sheriff and defendant both thought the bond to be for $4,800, without payment of $800 having been made thereon, then the case is one of mutual mistake, and the defendant is not liable in this action; even though the rule of *caveat emptor* should otherwise apply. That in such case there would be no contract.

8. That however completely the Sheriff may have guarded himself, or, by law, have guarded against contracting that the bond was of any particular quality, the contract of sale can be construed in no other way than that it was part of the agreement that the bond was for $4,800 and not for $4,000—not merely because the representation of it tended to such conclusion, but because both vendor and vendee actually so understood it. Otherwise, a contract never intended to be made would be enforced, if defendant should be held liable, as the action seeks to make him.

9. That in the sale of the bond the Sheriff was agent of John A. Rogers, the defendant in the execution under which it was sold; that if he was guilty of fraud in omitting the credit of $800 the contract of sale cannot be enforced against Edwards.

10. That concealment of a material fact, and such was the fact of payment of so large a sum by one who can derive a benefit therefrom, is equivalent to a positive misrepresentation and fraudulent.

11. That the concealment by John A. Rogers of so material a fact as said payment, whether by design or mistake, avoids the contract for the sale of the bond on the ground of legal fraud.

12. That whether Henry J. Rogers, the plaintiff in the execution under which the bond was sold, was cognizant of the fact of such payment before the sale, he is precluded from deriving any benefit from it; for by seeking such benefit he becomes *particeps criminis*, however innocent of the fraud in the beginning.

13. That *caveat emptor* cannot apply to the defendant, because he was never fixed with the character of *emptor*.

The third, fifth, sixth, seventh, eighth, tenth, eleventh, twelfth and thirteenth instructions asked for were denied; the first and fourth were given to the jury. The second was also given, " with the addition that the quantity and amount due were also the quality," &c. The ninth, so far as it related to *agency*, was given, but the rest was denied, and the jury was instructed that Edwards was fixed with the character of *emptor* by the statute for the purpose of recovering the difference of the bids out of him. The defendant excepted to so much of the charge as denied his instructions. The verdict was for the plaintiff and the defendant appealed.

*Spain*, for appellant:

That the rule *caveat emptor* applies to Sheriffs' sales, is admitted; but that it applies, without qualification or limit, in all cases, is by no means admitted. What is that rule? In Broom's Legal Maxims, (4th ed., 768,) the result of the authorities is thus stated: " Upon the whole, we may safely conclude that with regard to the sale of ascertained chattels there is not any implied warranty of either *title* or *quality*, unless there are some circumstances beyond the mere fact of such sale from which it may be implied." In the case of *Eichholtz* vs. *Bannister*, (112 Eng., C. L., 721,) Erle, C. J., says this is the principle: " I am in possession of a horse or other chattel; I neither affirm or deny that I am the owner, (or that it is sound or unsound.) If you choose to take it as it is, without more, *caveat emptor*, you have no remedy, though it should turn out that I have no title, (or it is unsound.) When that is the whole of the transaction, it may be that there is no warrant of title " or quality. A sale by a Sheriff " is notice to buyers that the Sheriff has no knowledge of the title to the goods" or of their quality. Judge Kent

(2 Com., 478, 485,) tells us "the common law very reasonably requires the purchaser to attend, when he makes his contract, to the *qualities* of the articles he buys, *which are supposed to be within the reach of his observation and judgment,* and which it is equally his interest and his duty to exert;" and, he adds, the law requires "the vendor to communicate those particulars and defects which cannot be supposed to be within the reach of such attention." The common law is not so unreasonable as to require a purchaser to attend when he makes his contract to the quality or character of the article, which is not within the reach of his observation and judgment.

The Circuit Judge instructed the jury, as asked, that the quality of a bond is the solvency or insolvency of the obligor. So far the purchaser could and ought to observe and judge; but the qualification, or addition, by the Judge, that the amount due was also of the quality of the bond, was carrying the rule into a region beyond possible observation and judgment of the buyer in a case where that amount was materially decreased by the suppression of a credit.

The doctrine of implied warranty "has always been applied to goods or effects of some *intrinsic* worth—to articles the nature of which is fixed and certain. It is obvious that the nature of a bond is always uncertain. Such is the mutability of human affairs that a man may be *solvent* to-day and *insolvent* to-morrow."—Colcock, J., in *Walker* vs. *Scott,* 2 N. & McC., 288; *Benton* vs. *Gibson,* 1 Hill, 56. In *Colburn* vs. *Matthews,* (1 Strob., 238,) O'Neall, J., says "that in the sales of an unnegotiable security there is no implied warranty, either of its goodness or money value, is too plain to require law to sustain it."

So that, by law, in the sale of a bond the rule *caveat emptor* applies, whether the sale is by the Sheriff or obligee, as to the solvency of the obligor. But the amount due and the solvency of the maker are quite distinct things. And so as to promissory notes. Yet, without warranty of quality or solvency in such sales, there is an *implied undertaking* that the articles are what their *appearance indicates,* and that they are not disguised so as to appear what they are not. The purchaser will be *presumed* to have acted upon the appearances indicated, and, according to the rule, the plaintiff was bound to guarantee that these were real and not deceptive. These are the utterances of Johnson, J., in *Strange* vs. *Ellison,* 2 Bailey, 385, and in reference to a promissory note with a forged endorsement, though there was no evidence that plaintiff

knew of the forgery at the time of the transfer or that he warranted the endorsement. Ellison agreed to deliver corn and fodder to Strange for the note, but, discovering the forgery, he refused, and the action was to enforce the *executory* contract. That case, in principle, is an exact precedent for this, and the two completely analogous, unless *caveat emptor* is Janus faced, one having regard to sales by a Sheriff and the other to sales by all other parties, and if a bond without a credit, but subject to a credit, is deceptive in its appearance. There, as here, the plaintiff seems to have been in ignorance as to material facts, and, though the rule applied as to quality, it did not apply as to appearances.

The Judge says he refused the seventh instruction, which claims relief from liability, on the ground of mutual mistake. As to the fact of mistake, both appellant and respondent aver it. They thought the bond to be what it appeared, for $4,800, without credit.

In *Strange* vs. *Ellison* there was no fraud, but relief was granted,—both parties being mistaken. In *Holden* vs. *Putnam Fire Insurance Company* (7 Am. R., 292,) Andrews, J., says: "It is a constant practice of Courts of equity to relieve parties from contracts grounded in material error and mistake of fact, although both parties were innocent and free from fraud."

In *Kyle* vs. *Kavanagh*, (4 Am. R., 560,) *held* an elementary law of contracts: that when there is a mistake as to the subject matter of sale the contract is not binding though there is no fraud.— *Roberts* vs. *Fisher*, 3 Am. R., 680. The point cannot be more strongly put than Johnson, J., stated it in *Means* vs. *Brickwell*, 2 Hill, 660. He said: "If any one principle can be regarded as definitely settled by the decisions of one of our Courts, it is that in actions on contracts the defendant at law may, in his defense, avail himself of the misrepresentations of the plaintiff in relation to the consideration of the contract, whether they were made through fraud or mistake." That case involved the right at law to defend because of a deficiency in quantity and character of land sold. This case concerns a defense for a deficiency in the quantity and character of the bond sold. "Mistake, misconception or misrepresentation are all good grounds of relief; and for the Court to interpose, and even to set aside contracts, it makes no difference that there was no intentional misrepresentation."—*Glover* vs. *Smith*, 1 DeS., 433. This is a stronger case than that. It is hardly necessary to say that a defense is equally available whether it is legal or equitable.—Code, § 172.

From what has been said, it is inferable that *caveat emptor* has no place in an *executory* contract. Appellant was never fixed with the character of *emptor.—Keele* vs. *Wheeler*, 49 E. C. L., 672. It is well to observe that at common law the rule applies to sales of real as well as personal property.—Bouv. Law Dic., *caveat emptor.* Where the contract remains *in fieri* the rule does not bind and mistake will be corrected.— *Cripps* vs. *Reade*, 6 T. R., 606. When the flaw is discovered before the purchase is completed there is no pretense to say the rule shall operate.—Lord Alvanley in *Johnson* vs. *Johnson*, 3 B. & P., 168, cited and approved in *Herbermont* vs. *Sharp*, 2 McC., 264; Judge Huger adding: "In no case can a sale of lands be regarded as completed until the purchaser has paid his money and the seller conveyed the land." There the purchaser stood as to the sale just as does the appellant here. He bid off the property, but, discovering the flaw before compliance with the ·terms, "he was not bound" to pay his bid. True enough, in *Towles* vs. *Turner*, (3 Hill, 182,) Johnston, Ch., does say "that case is very questionable." Just before, in *Murphy* vs. *Higginbottom*, (2 Hill, 398,) O'Neall, J., had referred to *Herbermont* vs. *Sharp*, without disparaging comment, as forming an exception to the general rule. After search, we say, with some confidence, it has never been overruled. The *dictum* of one Judge cannot outweigh the decision of a Court, and that supported as we have shown it to be, nor does the fact that land was involved deprive us of its benefit. *Cochran* vs. *Roundtree* (3 Strob., 219,) concerned a chattel. Judge Wardlaw says: "The power to enforce the compliance of the purchaser with the terms of sale by reselling at his risk, which the statute gives to a Sheriff, is not a power to rescind an *executed* contract, but a summary means of ascertaining the damages which have resulted from non-performance of an *executory* one." This is high evidence that appellant's contract was only *executory*, and the difference between the two sales the measure of damages which appellant, not respondent, would sustain if the liability is held to attach, notwithstanding the mistake and *Herbermont* vs. *Sharp*. Still later, (*Lewis* vs. *Brown*, 4 Strob, 295, concerning the sale of a negro,) Judge Evans says: "If Langford had been the purchaser in fact, then no title ever vested in him, because, according to his own account, he never paid the money; and, of course, there was no sale; and the resale, if made consistent with the rules of law, should be regarded as a sale at his risk and

because he had not paid." One would be inclined to think it, "of course," that there was no complete sale or change of property unless the condition precedent required by law had been performed, to wit, payment in cash, or unless there had been delivery of the property. Mr. Benjamin (on Sales, 222,) says: "Where the buyer is by contract bound to do anything as a condition, either precedent or concurrent, on which the passage of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."—*Moaks* vs. *Nicolson*, 115 E. C. L., 290; *Pickett* vs. *Cloud*, 1 Bail., 366; 2 Kent, 496.

Before *Herbermont* vs. *Sharp*, Sheriffs could sue for deficiency on resale, and, indeed, Blanding contended such actions *must* be by the Sheriff and no one else.—*Gardner* vs. *Sanders*, 2 Brev., 180. Surely the idea of the Circuit Judge that the statute fixes the character of *emptor* on a bidder *for the purpose* of recovering the difference cannot be law, if it is meant thereby that all bidders at the highest price are absolutely liable in any event. The only change, we submit, wrought by statute as to the bidder's liability since *Gardner* vs. *Sanders* and *Herbermont* vs. *Sharp* has been to restrict that liability by imposing additional conditions on Sheriffs. By Section 10, A. A. 1788, (5 Stat., 672,) the purchaser, as he is called, was made "liable" at the first ensuing Court, and judgment was not to be stayed by reason of any error in the proceeding against him, and he had only seven days of grace. By A. A. 1796, (*Id.*, 252,) the purchaser to whom property was "knocked off" was required to pay ten per cent. of his purchase immediately; if not paid the property was to be resold "upon the spot." If, after payment of the percentage, there was a resale the money paid was forfeited and the former purchaser could not bid again. By Gen. Stat., 473, the Sheriff might resell on the day of the first or other sale day, at the option of the plaintiff in execution, making proclamation of the sale at the risk of the former purchaser, as was provided in Section 58, A. A. 1839, 11 Stat., 39. At common law, independently of statute, a Sheriff's vendee was, as a general rule, bound by his contract, and the Sheriff might recover against him, by way of damages, the amount bid, with interest thereon.—*Boinest* vs. *Leigniz*, 2 Rich., 481; *Elfe* vs. *Gadsden*, 1 Strob., 321. But when the Sheriff pursues the statutory remedy to recover the difference between two sales he must strictly comply with the prescribed conditions.—

*Younge* vs. *Cathcart*, 2 Strob., 225. The liability of the vendee is the same at common law, and, under the statute, the effect of the latter being merely to afford "a summary means of ascertaining the damages which have resulted from non-performance of an executory contract," and to require specific duties of the Sheriff. The test of liability is not statutory; a new remedy is given by statutes in the particular case, and extends no further to alter the common law by which the liability is to be determined than to fix the measure of damages.—*Foster's* case, 11 Rep., 59.

It is material to observe that, as to the point now under discussion, we do not insist that there was any implied warranty in the sale, but on this: that, as the sale was incomplete, the contract was open and free of *caveat emptor*, appellant not being fixed with that character; that he occupies middle ground, and is, *in loco parintentiæ*, just where the mistake finds room for play. The vendee will not be pushed to the wall. The case is an exception, resting on decisions and reason. The benefit of that exception we invoke, not against the rule, but against the application of a doctrine questionable "in its origin in point of morals or general convenience," as Story says, (1 Eq. Jur., § 212.) and which "seems rather calculated to encourage injustice than to inculcate correct principles of moral duty," as Judge Brevard said in *Champneys* vs. *Johnson* (2 Brev., 273,) to appellant's case, the defect not being "within the reach of observation and judgment." The rule must yield, because, while there may have been no implied warranty of quality, there was, as in *Strange* vs. *Ellison*, an implied term that the article was "what its appearance indicates," especially as it is in proof appellant "acted upon the appearances indicated." If no such proof existed, the law would *presume* the fact.

The propositions already submitted will be strengthened in discussing the case in other aspects.

The Judge rightly instructed the jury, as requested, that the advertisement of the Sheriff was part of the contract of sale, but wrongly refused the instructions following that up, to the effect that the particular description implied a term that the bond was what it was represented to be; that the reading the advertisement at the time of sale was equivalent to a positive representation of the character of the bond, and that, without reference to quality, the contract of sale can only be construed to mean a bond of $4,800. And this construction was for the Court and not the jury.

By law the Sheriff is required "to specify in an advertisement the property to be sold," and to sell by auction.—Gen. Stat., 472, 473.

Conceding that a Sheriff's sale may be valid without advertisement, still, where he *does* advertise, the particulars of it are incorporated and become a part of the contract of sale.

Chancellor Kent and our Courts concur in the "importance that sales at auction, and particularly on legal process, should be conducted with good faith and without prejudice to any party."—*Hamilton* vs. *Hamilton*, 2 Rich. Eq., 381.

The instructions refused were as well warranted by law as that given; they were corrollaries. Specifications in an advertisement enter so essentially into the contract of sale that parol evidence cannot vary them. Thus, in *Gunnis* vs. *Exhart*, (1 H. Blk., 290,) where printed conditions of a copyhold estate stated it to be free from all encumbrances, defendant, who bought, finding an encumbrance, refused to go further, and was then sued for the price. At the trial plaintiff offered to prove that the auctioneer publicly declared, when the estate was put up, that there was a charge upon it. The Court held the evidence inadmissible, as it would open a door . to fraud and inconvenience to admit verbal declarations contrary to the printed particulars. These then formed part of the contract. So in *Limehouse* vs. *Gray*, (3 Brev., 231,) plaintiff sued to recover money paid for a slave sold at 'auction, under an advertisement stating all the negroes as "prime negroes." The defense was that the auctioneer, at the time of sale, declared that purchaser would buy subject to any defect except title. The evidence was admitted, but this was held error, as the contract, as advertised, could not be varied. In *McLean* vs. *Executors of Green*, (2 McM., 18,) it seems to be assumed by Judge Earle that such is the law.

In *Torrence* vs. *Bolton*, (3 Eng. R., 679,) it was argued "that it was the duty of the vendor to ascertain the correctness of the description of property put up for sale by him, and on a sale the description in the particulars is part of the contract, and the vendor cannot throw upon the purchaser the obligation of ascertaining its correctness or discovering mistakes in it. This rule holds good even in the case of sales under the Court." For this was cited in *Martin* vs. *Cotton*, 3 Jones & Latouche, 496, decided in 1846 by Lord St. Leonards; *Lachlan* vs. *Reynolds*, Kay, 52; *White* vs. *Cudden*, 8 C. & F., 766. The Vice-Chancellor, Mallins, observed:

"The proper office of the particulars is to describe the subject matter of the contract; that of the conditions, to state the terms on which it is sold."

In *Dimmock* vs. *Hallett* (L. R., 2 Ch., 20,) a sale was ordered by Court. There were printed particulars describing the premises. These Turner and Cairns, L. JJ., distinctly called the contract. It thus appears that, both as to the title and quality of the subject matter of sale, there are restrictions and qualifications of the maxim *caveat emptor.* "In general, on the sale of goods by a particular description, whether the vendee is able to inspect them or not, it is an implied term of the contract that they shall reasonably answer such description; and if they do not, it is unnecessary to put any other question to the jury."—Judge Mellor in *Jones* vs. *Just*, L. R., 3 Q. B., 203.

We are dealing with the advertisement,—the description of the subject matter, the specifications,—an act by law required of the Sheriff, and on his own responsibility or in conjunction with the plaintiff and defendant in execution, or with the one or other of them, and anterior to appellant's connection with the transaction. He acted on that printed statement, which was their contract, and in which was the implied term that the article sold should reasonably answer to the description of it; that it should be what its appearance indicated. On the accuracy of the specification he had the right to rely.

*Omission* of statement of what is true may be as fatal as *positive* statement of what is false. *Dimmock* vs. *Hallett* (*supra*) is a good illustration. There, as here, the statements were not true, because of omission of truth, and were "calculated to materially increase the apparent value of the property. The Court requires good faith in conditions (particulars) of sale and looks strictly at the statements contained in them." There, as here, the statements as made presented an apparent value, which could not have misled if the facts omitted had been known. There the purchaser had relief from the contract, though the failure was less than one-sixth of the whole consideration. There no willfulness was imputed because of the omissions; they were treated as accidental, yet as fraudulent, because calculated materially to mislead. This case (*Dimmock* vs. *Hallett*) and *Edwards* vs. *Wicker* (L. R., 1 Eq., 68,) teach the doctrine that "there is a misrepresentation if a statement is calcu-

lated to mislead or throw the person to whom it is made off his guard, though it may be literally true."—Kerr on F. and M., 92.

In *Torrence* vs. *Bolton*, already cited, the Vice-Chancellor said he had been pressed to hold "that the Court never entertains a suit for the rescission of a contract unless it has been obtained by fraud." His reply is in these words: "I express my strong impression, derived from many years' experience in cases of vendor and purchaser, that mistake, when it is satisfactorily established,—as when a purchaser has been led by the conduct of the vendor to believe that he has been purchasing one thing when in fact he has been purchasing another,—is just as good a ground for rescuing persons from a contract as a fraud. A remarkable instance of this is *Stanton* vs. *Tattersall*, which was a decision of Vice-Chancellor Stuart, never appealed from, but always acquiesced in and accepted as binding authority by Lord St. Leonards." That was a case of misdescription, not treated as fraudulent, and where, by a common act of prudence, the purchaser could have found out what he was buying. The house sold was described as situated in a fashionable street, but was not actually *in* that street, but was approached from it by a wooden passage. The relief was on the double ground of misrepresentation and failure in the description. On appeal *Torrence* vs. *Bolton* was affirmed.—4 Eng. R., 800. "No man can be held to what he has done under circumstances which have been erroneously represented to him by the other party to the transaction, however innocently the representation may have been made."—Turner, L. J., in *Rawlins* vs. *Wickham*, 3 DeGex & J., 317. In *Daniel* vs. *Mitchell*, (1 Story, 172,) Judge Story said: "Nothing is clearer in equity than the doctrine that a bargain founded upon false representations made by the seller, although made by innocent mistake, will be avoided."

The case of *Josling* vs. *Kingford*, (106 E. C. L., 447,) was this: Defendant sold oxalic acid to plaintiff; it had been inspected by plaintiff's agents and pronounced fit for use. Afterwards, on analysis, it was found to contain about ten per cent. of Epsom salts; this could not be detected by mere inspection. It was strenuously urged that *caveat emptor* applied, and specially as defendant was not the manufacturer, but an innocent vendor, and expressly refused any warranty. Lush, Q. C., *arguendo*, said the broad question was raised "which has never yet specifically been decided, viz., whether, upon a sale of goods, where the buyer has an opportunity of in-

specting them, and buys, relying on his own judgment, any warranty can be implied either as to quality or *as to the thing being that which it is represented to be.*"   The Court held "that however completely the defendant may have guarded himself against contracting that the thing was of any particular quality, it is not possible to construe the contract in any other way than that it was part of the agreement that the subject of the sale should be the thing described."

Changing the form, the proposition is thus strongly put by Chancellor Earle in *Hawkins* vs. *Pemberton*, 10 Am. R., 599:  "When a buyer purchases an article whose true character he cannot discover by an examination which it is practicable for him to make at the time, he may rely upon the positive representation of the seller as to its character."   In this case is cited *Henshaw* vs. *Rollins*, (9 Met., 83,) as holding the description of goods sold a warranty that they are what they are described to be, and that the rule holds good if their appearance is deceptive, even though they have been examined.

"The right to repudiate the purchase for nonconformity of the article delivered to the description under which it is sold is universally conceded.   Substantially, the description is warranted."— *Wolcott* vs. *Mount*, 13 Am. R., 442.   When the vendor is also the grower or manufacturer of the article sold, more is exacted of him than of ordinary vendors.—*Jones* vs. *Just, supra; Josling* vs. *Kingford, supra.*   Though a bond is neither grown nor manufactured literally, the analogy is good as to an obligee who vends it.

Sheriffs are as much bound by their representations as others; if what they do is calculated to make false impressions on the minds of bidders, the latter are not bound.—*Reid* vs. *Diven*, 7 Ind., 189.

We submit, then, that the Sheriff's specifications are of the essence of his contract; that "without any particular warranty it is an implied term in every such contract" that the article shall answer the description; that when there is no opportunity to inspect it the maxim *caveat emptor* does not apply.— *Gardner* vs. *Gray*, 4 Camp., 144;  or, what is the same thing, when the true character of the thing sold cannot be discovered by any examination practicable at the time of sale.—*Behn* vs. *Burness*, 113 E. C. L., 753; and specially in a case like this, where the obligee sells the bond taken by himself and suppresses evidence of payments.

The cases in our reports of Sheriffs against purchasers are of *executed* contracts, or raise questions of title or quality, "*not of the thing being what it was represented.*"

The cases bearing on this point are numberless, and far from consistent. The language is not uniform, even when the same end is reached. Distinctions most astutely drawn and practically unimportant serve as impediments rather than as lights in search of just conclusions.

It makes no difference to appellant whether the advertisement contained a condition precedent or an implied warranty.—*Bannerman* vs. *White*, 100 E. C. L., 850; or whether the description not being complete was a breach of contract or a non-compliance with it.—*Chanter* vs. *Hopkins*, 4 M. & W., 404.

We have cited cases involving the right to rescind *executed* contracts, and to enforce the performance of those *executory* merely. The case before the Court is substantially a complaint for specific performance. On what principle does the Court proceed in this respect? We will not refer to cases, but to Mr. Kerr's statement of them, beginning at page 357. In such cases, "the principles of ethics have a more extensive sway than where a contract is sought to be rescinded. The Court is not bound to decree specific performance in every case where it will not set aside a contract, or to set aside every contract that it will not specifically perform. Misrepresentation of a material fact, although innocently made, will be a bar to the application. An agreement effected by misrepresentation is incapable of being the subject of the interference of a Court of equity in order to compel its specific performance. If a prospectus be issued containing material representations, and a person accepts shares on their faith, the party making them cannot, if they prove untrue, compel performance, although he believed what he stated to be true." This is enough to indicate the point. We resist a decree to force this bond upon us.

Upon the law, we insist that appellant was entitled to the fifth, sixth, seventh and eighth instructions prayed.

The ninth, tenth, eleventh and twelfth instructions asked will be considered together.

The Sheriff is agent of the parties to the execution—*Towles* vs *Turner*, 3 Hill, 180; *Massey* vs. *Thompson*, 2 N. & McC., 108.

In *Cornfoot* vs. *Fouke*, (6 M. & W., 385,) it was held by Rolfe, Parke and Alderson, BB., Lord Abinger dissenting, that material

representations made by an agent respecting property which he honestly believed to be true, though false in fact and to the knowledge of the principal, did not prevent recovery by the principal on a contract upon a plea of fraud and *covin*. Mr. Kerr (p. 113) says that case has caused much comment, and had been explained by Lord Cranworth (one of the Barons.) When cited in *Barwick* vs. *England, &c.*, Bank L. R., (2 Ex., 261,) Judge Willes said he would be sorry to have it supposed that *Cornfoot* vs. *Fouke* turned up on anything but a point of pleading. That Lord St. Leonards said he would hold that, although the representation was *not* fraudulent, the agent not knowing it was false, yet that as it was in fact false, and false to the knowledge of the principal, the contract was vitiated. That Lord Campbell had said Westminster Hall was in favor of Lord Abinger. The case of *Fitzsimmons* vs. *Joslin*, (21 Vt., 129,) pronounces *Cornfoot* vs. *Fouke* to be bad law. So Lord Abinger is sustained in saying, " nothing is more certain than that the concealment or misrepresentation, whether by principal or agent, by design or by mistake, of a material fact, however innocently made, avoids the contract on the ground of a legal fraud. \* \* \* \* I own that it never occurred to me to doubt, upon principle or upon the authority of decided cases, that the knowledge of the principal was the knowledge of the agent, and the knowledge of the agent the knowledge of the principal."

Gross negligence is treated as the equivalent of actual fraud. That the execution defendant was grossly negligent in omitting the credit on the bond before he suffered it to pass from his possession into market, is not a matter of argument but of statement only. It not merely *tended* to mislead ; it actualy misled; and if the verdict stands, just to its full extent does he derive a benefit, and through it his brother gets a large payment on the debt, which, if the fact had been known, he never could have realized. Does a Sheriff's sale sanctify such an end?

But it is said the execution plaintiff is innocent. So he may have been up to the time of sale; so he was not when the action was brought, nor has he been at any time since. He may press his brother as harshly as he may find will to do, and collect his debt out of that brother's property; as to that we have naught to say. We do object that through that brother's wrong his debt shall be paid by the appellant, the innocent victim of that wrong.

A party cannot avail himself of an advantage that has been obtained through the misrepresentation or other wrong of a third person, although such third person is not his agent.—*Hunt* vs. *Moore*, 2 Barr., 105; *Fitzsimmons* vs. *Joslin*, (*supra.*) "Indeed, the doctrine has been thus broadly stated, that where once a fraud has been committed, not only is the person who committed the fraud precluded from deriving any benefit from it, but every innocent person is so likewise, unless he has innocently acquired a *subsequent* interest; for a third person, by seeking to derive any benefit from such a transaction, or to retain any benefit resulting therefrom, becomes *particeps criminis*, however innocent in the beginning."— Perry on Trusts, § 172, referring to numerous cases, English and American.

In *Towles* vs. *Turner*, Johnston, C., said: "It is a maxim that no one shall be permitted to take a benefit under a contract infected with fraud, although the fraud be that of a third person."

"Fraud may consist as well in the suppression of what is true as in the representation of what is false."—Chambre, J., in *Tapp* vs. *Lee*, 3 B. P., 371.

The general rule certainly is that mere silence, where there is no confidential relation, is not equivalent to a positive affirmation; but there are cases where silence would be a fraud, even though no relation of trust existed.—Perry, § 179. We find as to the facts no precedent for a case like this; it is unique. But here there was more than silence; there was an act grossly negligent in sending forth this article upon the market misleading on its face.

The obligor must have known of the levy and sale; he did know or ought to have known the purchaser would be under a mistake, and not to remove that mistake was equivalent to an express misrepresentation.—*Id.* And of that mistake advantage is sought by this action. Again, we ask, Is the Sheriff's office to become the sanctuary of injustice?

After diligent search, we have failed to find, as we have said, any case in its facts and circumstances closely resembling this; hence, we have sought to ascertain what is the rule, *caveat emptor*, with its qualifications and limits, and, if possible, a fixed principle upon which the defense may be founded. We conclude:

That whilst in this State upon the sale of all other ascertained specific chattels there is an implied warranty of soundness, yet as to unnegotiable securities there is not, but that as to those the maxim *caveat emptor* applies.

That still as to them there is upon their sale an implied term that they are what their appearance indicate.

That those appearances, if they are calculated to deceive, vitiate the contract of sale if they are the result of an act or omission on the vendor's part, even though such act or omission be not attributable to a wrong motive.

That at the root of the maxim *caveat emptor* is the supposition that the quality (character) of the article sold is within the reach of the vendee's observation and judgment.

That *fides servanda* is a rule equally enforced at law and in equity, and it requires the vendor to communicate those particulars and defects which cannot be supposed to be immediately within the reach of the vendee's attention.—2 Kent, 485.

That this last rule is without exception in the case of a sale by a grower or manufacturer of the article sold; the vendor of a bond taken by himself falling within the principle.—*Jones vs. Just*, (L. R., 3 Q. B., 202.)

That mistake is good ground for relief from a contract *executed*, and a valid excuse even for non-compliance with one *executory* merely.

That the maxim *caveat emptor* does not apply to an *executory* contract.

That the maxim is one and indivisible, applying alike to all sales, (when it applies at all,) whether private or official, and its qualifications and limits are alike in all.

That a Sheriff's advertisement is a substantive part of his contract of sale, and, therefore, a warranty of the particulars of description it contains of the articles sold.

That if the article, as described, differs from that offered for delivery in character and condition, the contract of sale cannot be enforced.

That the knowledge of the principal is the knowledge of the agent, and the contract of the latter the contract of the former. If the principal cannot enforce it, the agent cannot.

That gross negligence is equal to positive misrepresentation.

That concealment which in a given case must mislead creates a delusion which a vendor must remove or lose any advantage gained.

That third parties can take nothing under a contract vitiated with fraud when their situation remains unaltered.

Finally, without specifying other and minor conclusions, the law was misapplied on the trial, and appellant's motion should be granted.

*McIver*, contra:

The terms of the bond showed the payment of the $800, or at least were sufficient to put appellant upon the inquiry. He made no such inquiry. In fact, he seemed to be indifferent as to the credits. He made no inquiry as to solvency of obligor. If he had, would have found that he was insolvent. Defendant got all that he could have got—the land. He was not defrauded, for the land included in the mortgage given to secure the payment of the bond was, according to the testimony, worth his first bid.

The proposition that the rule of *caveat emptor* applies to sales by the Sheriff is too well established to be now shaken or modified, as sought in the appellant's exceptions, 2, 3, 5, 6–12, and that without proof of *actual* fraud, which in this case was distinctly disavowed. No representations made at such a sale will constitute a defense in an action against the purchaser.— *Thayer* vs. *Sheriff of Charleston*, 2 Bay., 169; *Davis* vs. *Murray*, 2 M. Con. Rep., 143; *Yates* vs. *Bond*, 2 McC., 382; *Davis* vs. *Hunt*, 2 Bail., 418; *Minter* vs. *Dent*, 3 Rich., 205; *Moore* vs. *Aiken*, 2 Hill, 403; *Towles* vs. *Turner*, 3 Hill, 178; *Perry* vs. *Williams*, Dud., 44; *Jones & Hughson* vs. *Burr*, 5 Strob., 147; *Kilgore* vs. *Peden & Johnson*, 1 Strob., 18; *Wingo* vs. *Brown*, 14 Rich., 103.

The appellant's last exception raises the question as to whether Edwards was ever fixed with the character of *emptor*. We reply that, for the purposes of this action, the Act of 1839 invests him with that character.—§ 58 of Act of 1839, 11 Stat., 54–5; Chap. 95, § 10, Rev. Stat., 473; *Moore* vs. *Aiken*, 2 Hill, 403; *Towles* vs. *Turner*, 3 Hill, 178.

In this connection, the cases of *Herbemont* vs. *Sharp* (2 McC., 264,) and *Lewis* vs. *Brown* (4 Strob., 293,) were commented on for the purpose of showing that they furnish no authority against his position.

May 8, 1876. The opinion of the Court was delivered by

MOSES, C. J. The argument for the motion proceeds upon the assumption that the advertisement of the Sheriff and his reference

to it at the time of the sale, not only implied that the whole sum expressed in the condition of the bond was due, but amounted to a positive representation that no portion of it had been paid. We do not concur in this conclusion. The condition stipulated for the payment of "eight hundred dollars at the signing and sealing of this bond." The instrument is found in the hands of the obligee, and a compliance with the condition on the performance of which his acceptance depended was properly inferable from his possession of the bond. It was at least enough to move the purchaser to inquiry, and he cannot complain if, with an intimation which was sufficient to induce further investigation, he refrained from making it The same inference would not follow in regard to the installments due at the time of the sale. The delivery raised no implication as to their payment. The satisfaction of these was not a condition precedent to its delivery. They became payable after and by force of it, and not, like the eight hundred dollars, "at the signing and delivery."

But conceding that the appellant is not affected with notice of payment, and is right in supposing, as he contends, that the said sum is included in the condition as an unpaid portion due on the day of sale, he cannot prevail in his motion. The rule of *caveat emptor* has been too long applied in this State to sales by a Sheriff to be now questioned. In view of this well-recognized principle, his counsel claims that while it does extend to Sheriffs' sales it is only so far as the title and quality of the property are concerned, and that it cannot embrace the sale of a bond, whose "quality" must be limited to the solvency or insolvency of the obligor, without regard to the amount due upon it. The properties which belong or are incident to the article or commodity are component parts of its quality. They are of the elements which are necessary to its composition as a whole. The very idea of a bond implies a sum due, which is a "quality" as essential as "the solvency or insolvency of the obligor." What is there in the form or character of such an instrument which should subject it to a principle different from that which is applied to other articles, which may be of a kind and character altogether dissimilar from that which their appearance indicates? If one should purchase at Sheriff's sale a bond conditioned to pay a certain sum, and should afterwards ascertain that he would be restricted in his recovery against the obligor to an

amount far below it by reason of a want of consideration as to the whole, or some other legal objection availing against it, would it constitute a sufficient defense in a suit by the Sheriff against the bidder for the full amount at which the bond was knocked off? The rule contended for in the argument for the motion seeks support in the proposition which it submits " that at a Sheriff's sale there is an *implied understanding* that the articles are what their appearance indicates and that they are not disguised so as to appear what they are not." If an article was disguised so as to represent something of a greater value for the purpose of inducing a higher bid even at a Sheriff's sale this would amount to fraud, and any actual fraud would affect it to the same extent as if perpetrated at a sale between private parties. On the same principle, fraudulent representations by the defendant are held to vitiate a sale by a Sheriff.

Nor is there better foundation for the proposition of the appellant which interposes on his behalf the ground of mutual mistake. That doctrine, which is recognized as well in the Courts of law as of equity, in cases where it can be properly applied, has never been extended to sales by Sheriffs. The reasons to which it owes its origin are inconsistent with those which result in the principle of *caveat emptor.*

The appellant's last exception raises the question whether he was ever fixed with the character of *emptor.* It is not material here to inquire whether there was in fact any sale, the purchase money not having been paid, nor to consider whether the contract was executed or executory. In this connection it may be enough to say that it has been held in more than one case that a Sheriff is not bound to resell before he can maintain his action for the price agreed upon against a purchaser refusing to comply.—*Moore* vs. *Aiken*, 2 Hill, 403; *Elfe* vs. *Gadsden*, 1 Strob., 225. It is true that where the sale is complete by the delivery of the article sold the Sheriff cannot afterwards seize and resell because the price has not been paid.— *Cochran* vs. *Roundtree*, 3 Strob., 217. His remedy there would be confined to an action for the purchase money. The right of the Sheriff to resell is by virtue of a statutory provision, which would fail to accomplish the very purpose it proposed if the defense here contended for could prevail, as is said by Judge Wardlaw in the case last above cited : " The power to enforce the

compliance of the purchaser with the terms of sale by reselling at his risk, which the statute gives to a Sheriff, is not a power to rescind an *executed* contract, but a summary means of ascertaining the damages which have resulted from non-performance of an *executory* one."

The course to be pursued by a Sheriff in the event of the non-compliance of the last bidder is directed by the 10th Section of the 55th Chapter of the General Statutes, 473. The liability, fixed by the Act, does not necessarily proceed upon the fact that a perfect and complete sale has been made, but follows from the non-compliance of the bid. It is that which gives the right to resell and the action to the Sheriff for any difference between the bids. It is because the sale has failed by the action of the last bidder to effect the object it was intended to accomplish, and to insure certainty in Sheriffs' sales, that this requisition of the statute has been interposed. The Act impressed upon the purchaser refusing to comply with the terms of sale the character of "*emptor*" for all the purposes and ends that it contemplates, and provides a mode for making him responsible for his bid at the first sale by requiring him to make it good by a liability to a resale at his risk. The whole design of the statute would fail if the defaulting bidder could claim exemption from the provisions on the ground that, as he had not paid his bid, he was no purchaser and therefore exempt from its operation. The statute itself designates him in terms " the purchaser."

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.